UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD**<br>14 Beacon St., Suite 602<br>Boston, MA 02108,<br><br>                **Plaintiff,**<br><br>                v.<br><br>**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**,<br>500 12th Street S.W., Stop 5009<br>Washington, DC 20536-5009, and<br><br>**UNITED STATES DEPARTMENT OF HOMELAND SECURITY**,<br>245 Murray Lane S.W.,<br>Washington, DC 20528,<br><br>                **Defendants.** | **Case No. 1:17-cv-2596**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Freedom of Information Act,<br>5 U.S.C. § 552 |

## INTRODUCTION

1.      Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, the National Immigration Project of the National Lawyers Guild ("NIPNLG" or "Plaintiff") files this action demanding Defendant United States Immigration and Customs Enforcement ("ICE") and Defendant U.S. Department of Homeland Security ("DHS") (collectively, "Defendants") release the requested agency records related to the use of mobile biometric devices and applications by ICE.

2.      Plaintiff NIPNLG is a U.S. non-profit organization dedicated to protecting the rights of immigrants and educating the public regarding immigration law.

3. Plaintiff, alongside Mijente, Inc. ("Mijente"), another U.S. non-profit organization, submitted two FOIA requests seeking basic information about the use of mobile biometric devices and applications in immigration actions. The first request was addressed to Defendant ICE, an agency within Defendant DHS, and the second request was addressed to the Office of Civil Rights and Civil Liberties ("CRCL"), a division of DHS (collectively, the "Agency").

4. In recent years, the proliferation of mobile biometric devices and applications in ICE enforcement actions has become a subject of significant public interest and raises national concerns over civil rights, racial profiling, and privacy rights.[1] Increased ICE raids under the Administration of President Donald J. Trump raise further questions as to whether mobile biometric devices, which agents are using in raids, are being deployed in communities with proper accountability and oversight.[2]

---

[1] Alvaro Bedoya, Deportation Is Going High-Tech Under Trump, THE ATLANTIC, Jun. 21, 2017; Courtney Norris, "Silicon Valley Jumps Into Biometric Gold Rush for Trump's 'Other Border Wall,'" PBS NEWSHOUR, May 5, 2017, available at http://www.pbs.org/newshour/updates/silicon-valley-jumps-biometric-gold-rush-trumps-border-wall/ ("In North America, government spending is expected to account for 40 percent of the biometric industry's market share by 2020."); Seung Min Kim, Trump Just Getting Started With Immigration Raids, POLITICO, Feb. 13, 2017 (noting that "ICE could also begin to use mobile units to scan fingerprints of suspected undocumented immigrants found during enforcement operations"); Lee Fang, Surveillance and Border Security Contractors See Big Money in Donald Trump's Immigration Agenda, THE INTERCEPT, Dec. 6, 2016; Ariel Cheung, 'This Is Wrong,' Latino Day Laborer Declares of ICE Raids at Job Sites, DNA INFO, Aug. 11, 2016; Zoe Carpenter, How the Government Created Stop-and-Frisk for Latinos, THE NATION, Sept. 3, 2014; Hannah Rappleye, Does High Tech Dragnet to Deport Immigrants Go Too Far, NBC NEWS, Feb. 28, 2014.

[2] *See e.g.* Sam Newhouse, "ICE arrests 107 in Philly as part of raids targeting Sanctuary Cities," METRO, September 29, 2017, available at https://www.metro.us/news/local-news/philadelphia/ice-arrests-sanctuary-cities-operation-safe-city (community reported that ICE agents deployed mobile biometrics devices on all residents after entering their home during recent Operation "Safe City" raids).

5.     Moreover, ICE has been promoting the use of mobile biometric devices and related technologies, particularly with local law enforcement.[3] Local police use of mobile biometric devices has been a significant subject of public interest and concern.[4]

6.     Plaintiff seeks the requested information in order to inform public debate regarding the use of such technologies by ICE and what accountability and oversight measures should be adopted to address their deployment in communities.

7.     The Agency has failed to comply with the statutory deadline for responding to either of Plaintiff's requests. Plaintiff's requests were submitted on March 17, 2017, so, even assuming the ten business day "unusual circumstances" extension applies, ICE and DHS were due to respond by April 28, 2017. As of the date of this filing, 263 days have elapsed since Plaintiff's requests were submitted, yet neither ICE nor DHS has given a formal response to either of Plaintiff's requests.

8.     ICE and DHS should not be permitted to flout FOIA's requirements. This Court should order Defendants to respond to Plaintiff's FOIA requests and disclose the requested information.

---

[3] *See e.g.* ICE, "Day 2: EDDIE," ICE AT NATIONAL SHERIFFS' ASSOCIATION 2017, Aug. 2, 2017, available at https://www.ice.gov/features/NSA2017 (discussing how the mobile biometric software application known as EDDIE was the highlighted technology at the ICE booth at the National Sheriff's Association convention); Pamela Brown, "CNN rides along as ICE team arrests illegal immigrants," ANDERSON COOPER 360, Jun. 1, 2016, available at http://www.cnn.com/videos/us/2016/06/01/ice-exclusive-ride-along-immigration-brown-pkg-ac.cnn.

[4] *See e.g.* "Street Level Surveillance: Biometrics FOIA Campaign," Muck Rock, available at: https://www.muckrock.com/news/archives/2015/aug/04/street-level-surveillance-who-using-mobile-biometr/.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

10. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

11. Plaintiff NIPNLG is a membership-based organization that works with immigrants swept into the removal system. It is a national non-profit organization that provides legal assistance and technical support to immigrant communities, legal practitioners, and advocates working to protect the rights of noncitizens seeking to promote justice and equality of treatment in all areas of immigration law.

12. Plaintiff seeks the requested information for the purpose of disseminating it to members of the public who have access to its public website and other free publications, as well as to interested members of the media and in speaking engagements and written materials. Disclosure of the requested information will contribute significantly to the public understanding of government operations and activities related to the use of mobile biometric devices and applications in immigration actions, because Plaintiff has the capacity and intent to disseminate widely the information to a broad audience. Disclosure of the requested information will shed light on aspects of processes of ICE and other agencies that are unknown to the public. Finally, consistent with its missions and past practices, Plaintiff intends, once it receives the information, to share it with fellow organizations dedicated to public interests as well as the public, in order to help protect the rights of immigrants, their families, and communities, including by increasing accountability in the use of biometric devices, and ensuring that affected individuals receive legal representation.

13. Defendant DHS is a cabinet department of the U.S. federal government with responsibilities focusing on public security in the United States. CRCL is a division within Defendant DHS whose stated purpose is to preserve individual liberty, fairness, and equality under the law. Defendant ICE is a component of Defendant DHS and is responsible for enforcing federal immigration and customs laws. Both ICE and DHS are "agenc[ies]" within the meaning of 5 U.S.C. § 552(f)(1). ICE and DHS have possession and control over the records Plaintiff seeks and are responsible for fulfilling Plaintiff's FOIA requests.

## STATUTORY FRAMEWORK

14. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

15. To that end, FOIA requires federal agencies to make government records "promptly available to any person" unless an enumerated exemption applies. *See* 5 U.S.C. § 552(a)(3).

16. In addition to the general requirement that records be made "promptly" available, FOIA sets forth a specific timeline for disclosure. In particular, the statute provides that a federal agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of," among other things, "such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i). In "unusual circumstances," including a "need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records," that deadline may be extended for a period not to exceed ten additional business days. *Id.* § 552(a)(6)(B).

17.     FOIA provides that a requester may sue in federal court without waiting for an answer whenever an agency does not abide by the applicable deadline. *Id.* § 552(a)(4)(B), (a)(6)(C)(i).

## FACTUAL ALLEGATIONS

### A.     Plaintiff's First FOIA Request

18.     On March 17, 2017, Plaintiff and Mijente electronically filed a FOIA request with ICE seeking certain categories of information regarding ICE's use of mobile biometric devices and applications. *See* Ex. A.

19.     Plaintiff's request sought a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii), citing the public's "significant interest" in having access to the requested records and Plaintiff's intention and proven ability to widely disseminate the information.

20.     Within minutes of submission, Plaintiff received an automatically generated e-mail acknowledging receipt of Plaintiff's request. *See* Ex. B.

21.     On May 10, 2017, Plaintiff received an e-mail from the ICE FOIA Office acknowledging receipt of Plaintiff's FOIA request and stating that it "may encounter some delay in processing your request." In this e-mail, ICE invoked its right to a 10-day extension pursuant to 5 U.S.C. § 552(a)(6)(B). The e-mail also provided with respect to Plaintiff's request for a fee waiver that "[u]pon review of your request and a careful consideration of the factors listed above, I have determined to grant your request for a fee waiver." Despite using the personal pronoun "I," no individual was identified as a point of contact in the e-mail. *See* Ex. C.

22.     Since May 10, 2017, Plaintiff has heard nothing further regarding its request.

23.     Since filing the request, Plaintiff's counsel has attempted to call ICE and DHS numerous times. On all but one call, Plaintiff's counsel received an answering machine or no

response. Plaintiff's counsel was only able to speak to DHS once, during a call on April 21, 2017, at which time they were informed that processing of the request had been delayed because it had been lost in the Agency's e-mail inbox.

24. Even assuming the ten business day extension was warranted, a response to Plaintiff's March 17 request should have been forthcoming by April 28, 2017, pursuant to 5 U.S.C. §§ 552(a)(6)(A)(i) and (a)(6)(B). Even counting May 10, 2017, as the date of receipt, a response was due June 21, 2017 (again assuming the invocation of the ten business day extension provision).

25. A search regarding the status of Plaintiff's FOIA request on the website http://www.dhs.gov/foia-status provides that the request was received on March 17, 2017, and the status of the request is "Request for Docs Sent." Searches on this website by Plaintiff's counsel prior to September 22, 2017, stated that the estimated delivery date was May 3, 2017. A search by Plaintiff's counsel on September 22, 2017, revealed that the estimated delivery date had been updated to October 24, 2017. As of December 5, 2017, the date of this Complaint, the estimated delivery date is now December 7, 2017.

26. Pursuant to 5 U.S.C. § 552(a)(6)(C), Plaintiff is deemed to have exhausted any and all administrative remedies with respect to this FOIA request because Defendants failed to comply with the time limit set forth in 5 U.S.C. § 552(a)(6)(A).

        **B.**     **Plaintiff's Second FOIA Request**

27. On March 17, 2017, Plaintiff and Mijente electronically filed a FOIA request with DHS CRCL seeking records relating to civil rights or civil liberties investigations conducted regarding the use of mobile biometric devices or applications. *See* Ex. D.

28. Plaintiff's request sought a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii), citing the public's "significant interest" in having access to the requested records and Plaintiff's intention and proven ability to widely disseminate the information.

29. Plaintiff did not receive any acknowledgment until March 22, 2017. On March 22, 2017, Plaintiff received an e-mail providing that DHS would not open FOIA requests sent as attachments. *See* Ex. E.

30. In response to this e-mail, Plaintiff and Mijente resubmitted the FOIA request to DHS CRCL later that same day, with the text of the request in the body of the electronic submission rather than in an attached PDF file.

31. Plaintiff has heard nothing further regarding its request, including its request for a fee waiver.

32. Since filing the request, Plaintiff's counsel has attempted to call ICE and DHS numerous times. On all but one call, Plaintiff's counsel received an answering machine or no response. Plaintiff's counsel was only able to speak to DHS once, during a call on April 21, 2017, at which time they were informed that processing of the request had been delayed because it had been lost in the Agency's e-mail inbox.

33. Unlike Plaintiff's first request, Plaintiff never received an acknowledgement that their second request had been received after it was resubmitted on March 22, 2017. Giving DHS the benefit of the ten business day extension, a response to Plaintiff's March 17 request should have been forthcoming by April 28, 2017, pursuant to 5 U.S.C. §§ 552(a)(6)(A)(i) and (a)(6)(B). Even counting March 22, 2017, as the date of receipt, a response was due by May 3, 2017.

34. Pursuant to 5 U.S.C. § 552(a)(6)(C), Plaintiff is deemed to have exhausted any and all administrative remedies with respect to its FOIA request because Defendants failed to comply with the time limit set forth in 5 U.S.C. § 552(a)(6)(A).

## CLAIM FOR RELIEF

### COUNT I

**FOIA Violation: Failure To Timely Release Responsive Records by ICE**

35. Plaintiff re-alleges and incorporates by reference paragraphs 1–34.

36. Plaintiff submitted a FOIA request to ICE on March 17, 2017.

37. As of the date of this Complaint and in violation of the deadlines set forth in 5 U.S.C. § 552(a)(6), ICE has failed to notify Plaintiff of any determination about whether Defendant will comply with Plaintiff's FOIA requests; the reasons for any such determination; or Plaintiff's right to appeal any adverse determination to the head of the Agency.

38. As of the date of this Complaint, Defendant has failed to produce any records responsive to the request; indicate when any responsive records will be produced; or demonstrate that responsive records are exempt from production.

39. ICE has not invoked any FOIA exemption, and none apply. Even if one or more exemptions did apply to certain portions of the requested records, ICE must disclose any reasonably segregable non-exempt portions. 5 U.S.C. § 552(a)(8)(A)(ii)(II). And even if ICE determines that all of the information Plaintiff requested is somehow exempt, ICE is required to inform Plaintiff of that determination.

40. ICE has violated 5 U.S.C. § 552(a)(6)(A) by failing to timely respond to Plaintiff's request.

## COUNT II

### FOIA Violation: Failure To Timely Release Responsive Records by DHS

41. Plaintiff re-alleges and incorporates by reference paragraphs 1–34.

42. Plaintiff submitted a FOIA request to DHS CRCL on March 17, 2017.

43. As of the date of this Complaint and in violation of the deadlines set forth in 5 U.S.C. § 552(a)(6), DHS has failed to notify Plaintiff of any determination about whether Defendant will comply with Plaintiff's FOIA requests and request for fee waiver; the reasons for any such determination; or Plaintiff's right to appeal any adverse determination to the head of the Agency.

44. As of the date of this Complaint, Defendant has failed to produce any records responsive to the request; indicate when any responsive records will be produced; indicate whether Plaintiff's fee waiver will be granted; or demonstrate that responsive records are exempt from production.

45. DHS has not invoked any FOIA exemption, and none apply.  Even if one or more exemptions did apply to certain portions of the requested records, DHS must disclose any reasonably segregable non-exempt portions.  5 U.S.C. § 552(a)(8)(A)(ii)(II).  And even if DHS determines that all of the information Plaintiff requested is somehow exempt, DHS is required to inform Plaintiff of that determination.

46. DHS has violated 5 U.S.C. § 552(a)(6)(A) by failing to timely respond to Plaintiff's request.

## **PRAYER FOR RELIEF**

### **COUNT I**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and:

a. Declare that ICE's withholding of the requested records is unlawful;

b. Order ICE to make the requested records available to Plaintiff within 20 days;

c. Order ICE to produce a Vaughn index describing with particularity the content of any documents withheld, in whole or in part, and identifying the FOIA exemptions ICE asserts to justify such withholding;

d. Enjoin ICE from destroying any documents that may be responsive to Plaintiff's request;

e. Award Plaintiff its costs and reasonable attorneys' fees in accordance with 5 U.S.C. § 552(a)(4)(E); and

f. Order such other relief as the Court may deem just and proper.

### **COUNT II**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and:

a. Declare that DHS's withholding of the requested records is unlawful;

b. Order DHS to make the requested records available to Plaintiff within 20 days;

c. Enjoin DHS from assessing fees or costs for the processing of the FOIA request submitted by Plaintiff to DHS CRCL;

    d.        Order DHS to produce a Vaughn index describing with particularity the content of any documents withheld, in whole or in part, and identifying the FOIA exemptions DHS asserts to justify such withholding;

    e.        Enjoin DHS from destroying any documents that may be responsive to Plaintiff's request;

    f.        Award Plaintiff its costs and reasonable attorneys' fees in accordance with 5 U.S.C. § 552(a)(4)(E); and

    g.        Order such other relief as the Court may deem just and proper.

Dated: December 5, 2017

Respectfully submitted,

*/s/* C. Kevin Marshall
C. Kevin Marshall
DC Bar No. 476266
ckmarshall@jonesday.com
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
Telephone: +1.202.879.3939
Facsimile: +1.202.626.1700

Cormac A. Early
DC Bar No. 1033835
cearly@jonesday.com
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
Telephone: +1.202.879.3939
Facsimile: +1.202.626.1700

*Attorneys for Plaintiff*