# Exhibit A

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001.2113

TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

Direct Number: (202) 879-3437
smlevine@JonesDay.com

March 17, 2017

**VIA E-MAIL:  ICE-FOIA@DHS.GOV**

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street S.W., Stop 5009
Washington, D.C. 20536-5009

      Re:    **Freedom of Information Act Request:  Mobile Biometric Devices and Applications**

Dear Sir or Madam:

      The Jones Day law firm represents Mijente Inc. ("Mijente") and the National Immigration Project of the National Lawyers Guild ("NIPNLG").  Mijente is a national organization that coordinates and organizes with its affiliates in several states to address issues relating to immigration enforcement and Latinx political participation.  Founded by community organizers, its focus is on developing and sparking social change with respect to immigration and other social justice issues in the Latinx community and beyond.  NIPNLG is a membership-based organization that works with immigrants swept into the removal system.  It is a national non-profit organization that provides legal assistance and technical support to immigrant communities, legal practitioners, and advocates working to protect the rights of noncitizens, seeking to promote justice and equality of treatment in all areas of immigration law.

      In accordance with the Freedom of Information Act, 5 U.S.C. § 552, I request on behalf of our clients the records that are described below or contain the information described below:

1. All manuals or records, including but not limited to those described in 5 U.S.C. §§ 552(a)(2)(B) & (C), and any forms or checklists that:

   a. Describe the history of the use of mobile biometric devices and applications by U.S. Immigration and Customs Enforcement ("ICE") for immigration purposes, including but not limited to the application designated Eagle Directed Identification Environment ("EDDIE").

   b. Contain any training materials or protocols for ICE agents regarding the use of mobile biometric devices or applications, including but not limited

NAI-1502437651v4

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • RIYADH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

U.S. Immigration and Customs Enforcement
March 17, 2017
Page 2

    to EDDIE, for any immigration enforcement actions, including raids, workplace actions, and fugitive operations. The requested training materials or protocols include but are not limited to (i) descriptions of which types of ICE agents are authorized to use mobile biometric devices or applications in immigration actions; (ii) information regarding how the use of mobile biometric devices or applications for immigration purposes is supervised; (iii) instructions on the utilization of mobile biometric devices or applications by ICE agents in immigration actions; (iv) descriptions of and instructions for utilization of mobile biometric devices or applications by ICE agents for immigration purposes in conjunction with other technologies or devices; (v) descriptions of when mobile biometric devices or applications are to be used during the course of an immigration enforcement action by ICE agents; and (vi) instructions regarding the statements to provide to subjects of mobile biometric devices or applications, as well as follow-up responses to questions or refusals to be subjected to such devices or applications.

c. Describe any procedures or protocols for determining the circumstances under which ICE agents will use mobile biometric devices or applications, including but not limited to EDDIE, in any given immigration action, including but not limited to how the decision is made and whether such decision is subject to review.

d. Describe the types of data collected using mobile biometric devices or applications, including but not limited to EDDIE, by ICE agents in immigration functions.

e. Describe the storage and retention of data collected using mobile biometric devices or applications, including but not limited to EDDIE, by ICE agents in immigration functions, including but not limited to the names of the databases to which such information is uploaded and stored (regardless of whether such databases are maintained by ICE).

f. Describe the way that data collected using mobile biometric devices or applications, including but not limited to EDDIE, by ICE agents in immigration functions is matched against records in databases (regardless of whether such databases are maintained by ICE).

g. Describe or relate to plans for ICE to expand the use of mobile biometric devices or applications, including but not limited to EDDIE, by ICE

NAI-1502437651v4

JONES DAY

U.S. Immigration and Customs Enforcement
March 17, 2017
Page 3

        agents in immigration functions, including but not limited to plans to expand the use of mobile biometric devices or applications in conjunction with U.S. federal agencies other than ICE and/or U.S. sub-federal agencies or local law enforcement.

    h.    Describe or relate to any procedure or protocol for sharing the information collected by ICE agents using mobile biometric devices or applications, including but not limited to EDDIE, in immigration functions with other U.S. federal or sub-federal agencies or organizations.

2.    With respect to each ICE immigration program that involves the use of mobile biometric devices or applications, including but not limited to EDDIE, provide (i) the name of the program; (ii) the geographic region in which such program operates; (iii) any records describing the program; and (iv) the number of individuals whose information has been collected using the program, as well as the aggregate amount of each type of personal information that has been collected (e.g., fingerprints, photographs).

3.    The number of mobile biometric devices and applications, including but not limited to EDDIE, used by ICE for immigration functions, both nationally and in each field office.

4.    Budgetary and any other financial records pertaining to the use of mobile biometric devices or applications, including but not limited to EDDIE, by ICE for immigration functions, including but not limited to any changes to budgets and funding on or after January 20, 2017.

5.    All U.S. federal inter-agency communications, contracts, memoranda of understanding, and agreements that address or pertain to the use of mobile biometric devices or applications, including but not limited to EDDIE, for immigration functions.

6.    All communications, contracts, memoranda of understanding, and agreements with U.S. sub-federal governmental entities or law enforcement agencies that address or pertain to the use of mobile biometric devices or applications, including but not limited to EDDIE, for immigration functions, including but not limited to notifications or solicitations for comments to U.S. sub-federal governmental entities or law enforcement agencies.

7.    All records and policies pertaining to the use of mobile biometric devices or

NAI-1502437651v4

JONES DAY

U.S. Immigration and Customs Enforcement
March 17, 2017
Page 4

    applications in agreements executed pursuant to section 287(g) of the Immigration and Nationality Act of 1965, Pub. L. No. 89-236 ("287(g) Agreements"), including but not limited to (i) how federal databases are linked to sub-federal databases with respect to information collected using mobile biometric devices or applications pursuant to 287(g) Agreements; (ii) how state and local law enforcement officers deputized under 287(g) Agreements are trained in the use of mobile biometric devices or applications; (iii) the methods used to provide mobile biometric devices or applications to state and local law enforcement officers deputized under 287(g) Agreements; and (iv) how mobile biometric devices or applications already in the possession of state and local law enforcement officers are utilized pursuant to 287(g) Agreements.

8. All records that:

   a. Contain policies pertaining to personal privacy with respect to information collected by ICE agents using mobile biometric devices or applications, including but not limited to EDDIE, for immigration purposes.

   b. Pertain to the standards of confidentiality for information collected by ICE agents using mobile biometric devices or applications, including but not limited to EDDIE, in immigration functions.

   c. Describe information retention and destruction policies with respect to information collected by ICE agents using mobile biometric devices or applications, including but not limited to EDDIE, for immigration purposes.

   d. Contain legal analyses, opinions, or memoranda regarding the use of mobile biometric devices or applications, including but not limited to EDDIE, by ICE agents for immigration purposes.

   e. Relate to civil rights or civil liberties investigations conducted by ICE, the Department of Homeland Security's Office for Civil Rights and Civil Liberties, or third parties regarding ICE's use of mobile biometric devices or applications in immigration actions, including but not limited to complaints of racial profiling, indiscriminate fingerprinting, immigration sweeps, or collateral arrests.

   f. Contain analyses of the accuracy of the information gathered from mobile biometric devices or applications, including but not limited to EDDIE, by ICE agents for immigration purposes.

NAI-1502437651v4

JONES DAY

U.S. Immigration and Customs Enforcement
March 17, 2017
Page 5

9. All reports describing the outcomes of any investigations into the use of mobile biometric devices or applications, including but not limited to EDDIE, by ICE agents in immigration functions.

10. All reports prepared regarding the outcome of the use of mobile biometric devices or applications, including but not limited to EDDIE, in particular enforcement actions.

11. All records related to press, public, and/or U.S. Congressional inquiries regarding the use of mobile biometric devices or applications, including but not limited to EDDIE, by ICE agents in immigration actions.

12. The number of individuals that have been apprehended for immigration-related purposes by any law enforcement agency as a result of the use of mobile biometric devices or applications, including but not limited to EDDIE, by ICE agents, and the ultimate outcome of such apprehension.

13. All arrest or apprehension records, including but not limited to Forms I-213, Record of Deportable Alien, in the possession of the ICE Chicago Field Office or the ICE Atlanta Field Office that reference the use of mobile biometric devices or applications, including but not limited to EDDIE.

I respectfully request a waiver of fees in accordance with 5 U.S.C. § 552(a)(4)(A)(iii). That provision is to be "liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003). Neither Jones Day nor our clients have a commercial interest in this information. Rather, Jones Day is providing pro bono legal services to NIPNLG and Mijente, both of which are non-profit organizations dedicated to public interests. Attorneys, noncitizens, and any other interested members of the public may obtain information about immigration-related issues through NIPNLG and Mijente's distribution of written materials, including on their respective websites, and through public and educational appearances. NIPNLG and Mijente seek the requested information for the purpose of disseminating it to members of the public who have access to their public websites and other free publications, and not for the purpose of commercial gain. In addition, disclosure of the requested information "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k). Disclosure of the requested information will contribute significantly to the public understanding of government operations and activities related to use of mobile biometric devices and applications in immigration actions because NIPNLG and Mijente have the capacity and intent to disseminate widely the information to a broad audience. NIPNLG and Mijente will review and analyze the information obtained through this FOIA request. In addition, NIPNLG and Mijente staff will speak publicly and publish written materials to be shared with the public

JONES DAY

U.S. Immigration and Customs Enforcement
March 17, 2017
Page 6

and organizational members.  NIPNLG and Mijente will make the information available through their respective websites, which are accessible by any member of the public. Moreover, NIPNLG and Mijente have frequent contact with national print and news media and plan to share information gleaned from FOIA disclosures with interested media. Disclosure of the requested information will shed light on aspects of processes of ICE and other agencies heretofore unknown to the public.  Finally, consistent with their missions and past practices, the organizations intend, once they receive the information, to share it with fellow organizations dedicated to public interests as well as the public, in order to help protect the rights of immigrants, including ensuring that they receive legal representation.

If my fee-waiver request is denied, I am willing to pay fees up to a maximum of $100.  For reasons similar to those set out above, this request at least qualifies for substantially reduced fees.  If you nevertheless estimate that the fees will exceed this limit, or if you have any questions regarding this request, please contact me at 202-879-3437 or smlevine@jonesday.com.  I reserve the right, however, to challenge a denial of my fee-waiver request.  *See* 5 U.S.C. § 552(a)(4)(A)(vii).

Please deliver the requested documents by email or mail.

Thank you for your consideration of this request.  I look forward to receiving your response within the 20-day period set by Congress.  *See id.* § 552(a)(6)(A)(i).

Sincerely,

Scott M. Levine

NAI-1502437651v4